IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 12–cv–00459–KMT

JAMES P. TATTEN, individually,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A.,
BAC HOME LOANS SERVICING, LP, and
BRIAN T. MOYNIHAN, in his capacity as President and Chief Executive Officer,

    Defendants.

**ORDER**

This matter is before the court on "Defendants' Renewed Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 27 [Mot.], filed June 20, 2012). Plaintiff did not file a response to the motion. This matter is ripe for ruling.

**I.  FACTUAL BACKGROUND**

In his Complaint, Plaintiff states in November 2008, he suffered a head injury and was hospitalized for intensive inpatient rehabilitation. (Doc. No. 3, ¶¶ 2–5.) Plaintiff states in January 2009, he notified Defendant Bank of America ("BOA") that he was being treated for traumatic brain injury and that he would need assistance of his family in "identifying and handling his financial matters, including his accounts with Bank of America." (*Id.*, ¶ 6.)

Plaintiff alleges after January 2009, Defendant BOA "engaged in wrongful and unlawful conduct directed at Plaintiff Tatten's and his account(s), loan modification(s) and real property . . . ." (*Id.*, ¶ 7.) Plaintiff alleges Defendant BOA made "statements to mislead, misrepresent and deceive the terms, conditions, costs and effect of loan modification" and coerced Plaintiff into signing a mortgage loan modification. (*Id.*, ¶ 9.)

At some point, Plaintiff stopped making his monthly loan payments (*id.*, ¶ 36), and on June 15, 2009, he received a letter from BOA's counsel advising foreclosure proceedings had begun. (*Id.*, ¶ 37.) Plaintiff alleges on July 15, 2009, he received assurances from BOA that his account was "on hold" and his home was not in foreclosure. (*Id.*, ¶ 38.) On August 29, 2009, Plaintiff received another loan modification agreement from BOA, which Plaintiff was instructed to review, sign, and deliver to BOA on or before September 28, 2009. (*Id.*, ¶ 42.) Plaintiff alleges on September 17, 2009, he received a "wrongful and incorrect notice of cancelation [sic]" from BOA, and on September 22, 2009, BOA's counsel wrote to Plaintiff to advise him that BOA had instructed them to proceed with foreclosure. (*Id.*, ¶¶ 43–44.)

Plaintiff states that he wrote letters to BOA's counsel, and on September 28, 2009, "under duress, amended, signed, notarized and delivered" the loan modification to BOA. (*Id.*, ¶¶ 45–47.) On October 8, 2009, the Public Trustee for Denver County set the auction of Plaintiff's property for October 15, 2009. (*Id.*, ¶ 48.)

Plaintiff alleges on October 27, he received another letter from BOA "contain[ing] statements of material facts that are misleading, false and fraudulent." (*Id.*, ¶ 50.) On October 28, 2011, Plaintiff filed Consumer Complaint with the United States Department of Treasury,

2

Comptroller of the Currency, Administrator of National Banks.  (*Id.*, ¶ 51.)  On January 18, 2012, Plaintiff received notice from the Office of the Comptroller of the Currency that his request for review of BOA's foreclosure action was received.  (*Id.*, ¶ 52.)  Plaintiff states a Rule 120 foreclosure hearing was held on January 20, 2012, BOA's attorney "made statements to the Court that mislead and misrepresented documents, terms, conditions and business decisions material to the case . . . thereby convincing the Court to authorize [BOA] to proceed with a wrongful and unlawful foreclosure."  (*Id.*, ¶ 53.)

Plaintiff asserts four claims for relief against all defendants, including a claim for fraudulent misrepresentation, intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, and violation of the Real Estate Settlement Procedures Act ("RESPA").  (*See id.* at 14–22.)

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) on the bases that (1) Plaintiff has failed to plead his fraud claim with specificity; (2) Plaintiff has not alleged any outrageous conduct; (3) Plaintiff has failed to plead any of the elements of breach of contract; (4) Plaintiff cannot establish the existence of a fiduciary duty owed by the defendants; and (5) Plaintiff's RESPA claim is barred by the statute of limitations.  (*See* Mot.)

## II.  LEGAL STANDARDS

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.     *Failure to State a Claim Upon Which Relief Can Be Granted*

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### III.  ANALYSIS

#### *A.    Personal Participation of Defendant Moynihan*

Defendants argue that the tort claims against Defendant Moynihan fail because Plaintiff has failed to allege personal participation by Defendant Moynihan.  As a general rule, a corporate officer or shareholder, by virtue of that status alone is not liable for the acts or debts of the corporation. *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156 (D. Colo. 1990) ("A corporation is a separate entity distinct from the individuals comprising it.  Personal liability cannot be imposed on an officer of a corporation merely because that individual is serving in such a capacity.") (citing *United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir. 1987)). Corporate agents are liable for torts of the corporation if they approved of, sanctioned, directed, actively participated in, or cooperated in such conduct. *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003).

Here, Plaintiff states that Defendant Moynihan "is being sued in his official capacity as the Chief Executive Officer of Bank of America Corporation and employed by Bank of America Corporation with responsibility for the acts, conduct and business practices of Bank of America Corporation." (Doc. No. 3 at 6, ¶ 20.)  Plaintiff alleges only that Defendant Moynihan committed the alleged acts "by and through the employees, representatives and agents of the Office of the Chief Executive Office and President." (*Id.* at 13, ¶ 54.)  However, Plaintiff fails to allege that Defendant Moynihan "approved of, sanctioned, directed, actively participated in, or

cooperated in" any of the alleged wrongdoing. *Hoang*, 80 P.3d at 868. Rather, Plaintiff alleges only that he had communication with the "Office of the Chief Executive Officer." (*See* Doc. No. 3, ¶¶ 35, 38, 39, 50, 54, 64–65, 73, 85, 91–94.) Plaintiff's allegations against Defendant Moynihan are insufficient to show his personal participation in the alleged torts, and the tort claims against Defendant Moynihan are dismissed.

### B.   *Defendant Moynihan's Liability for Contract Claims*

Defendants also argue that Defendant Moynihan cannot be held liable for the contracts of the corporation. Two important principles of law insulate corporate officers from individual liability when they are acting on behalf of the corporate entity.

First, a corporation is always a separate entity distinct from its officers, directors, or investors. *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1156 (D. Colo. 1990). A court generally will not allow the corporate veil to be pierced except in certain factual circumstances. The court considers a variety of factors to determine whether the corporate form should be disregarded including:

> (1) whether the corporation is operated as a separate entity, (2) commingling of funds and other assets, (3) failure to maintain adequate corporate records, (4) the nature of the corporation's ownership and control, (5) absence of corporate assets and undercapitalization, (6) use of the corporation as a mere shell, (7) disregard of legal formalities, and (8) diversion of the corporation's funds or assets to noncorporate uses.

*Newport Steel*, 757 F. Supp. at 1157. Here, however, Plaintiff did not plead or ask for relief under this theory, nor has he made any allegations that support such a claim.

Second, "[g]enerally, a corporate officer acting in his or her representative capacity and within his or her actual authority is not personally liable for such representative acts unless acting on behalf of an undisclosed principal." *Kunz v. Cycles West, Inc.*, 969 P.2d 781, 784 (Colo. App.1998). Furthermore, "unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958). In this case, it is clear from the Complaint that Plaintiff knew he was dealing with a BOA, a corporation, and not an officer on behalf of an undisclosed principal. Thus, Defendant Moynihan cannot be held personally liable for the contracts between Plaintiff and BOA, and the contract claims against Defendant Moynihan are dismissed.

### C.     *Fraudulent Misrepresentation Claim*

Defendants argue that Plaintiff's fraudulent misrepresentation claim fails for lack of specificity and also because Plaintiff has failed to establish that BOA made any misrepresentation with respect to his loan or to allege any damages.

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Fraud claims, however, must meet more stringent standards. *See* Fed. R. Civ. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice.' " *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d at 1252.

The requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003) ("Rule 9(b) protects defendants from harm to their goodwill and reputation." (internal quotation marks omitted)); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) ("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to defendant's reputation."). The requirement to plead with particularity also puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense. *See Westinghouse*, 352 F.3d at 921. A related goal of Rule 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992).

The Tenth Circuit has fleshed out the components necessary for a successful Rule 9(b) pleading. *In Sheldon v. Vermonty*, 246 F.3d 682, 2000 WL 1774038 (10th Cir. 2000) (unpublished table decision), the Tenth Circuit held that the plaintiff had alleged with specific particularity a violation of the Securities Exchange Act of 1934. *See* 246 F.3d 682, 2000 WL 1774038, at *4. The Tenth Circuit concluded that the complaint adequately met Rule 9(b) requirements because, first, it alleged misrepresentations with background information as to date, speaker, and the medium of communication. *Id.* at 5. Second, certain alleged misrepresentations involved "patently false statements of present fact." *Id.* Third, the allegations of scienter were sufficient. *Id.*

"At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902, 2000 WL 1595976, at *3 (10th Cir.2000) (unpublished table decision). "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.' " *Midgley v. Rayrock Mines, Inc.*, 374 F. Supp.2d 1039, 1047 (D.N.M. 2005) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d at 1252).

Plaintiff alleges Defendant BOA "defrauded" him "for the purpose of obtaining money; causing economic loss, causing non-economic loss; and terminating the Plaintiff['s] rights and interest in the unique, real property . . . ." (Doc. No. 3 at 4, ¶ 10; *see generally id.*, ¶¶ 28, 36, 50–51, 62, 73, 74, 93.) These statements are merely conclusory, not factual. Plaintiff has failed to identify which statements contained in which documents or made by which persons were fraudulent and the reasons for those beliefs. Moreover, Plaintiff does not identify who made those statements, when they were made, or under what circumstances. Because Plaintiff's fraudulent misrepresentation claim has failed to "set forth the who, what, when, where and how of the alleged fraud," *Coastal Healthcare*, 232 F.3d at *3, and the mandate of Rule 9(b), it is dismissed.

### D.     Breach of Contract Claim

Defendants argue Plaintiff has failed to plead the elements necessary for a breach of contract claim. To state a claim for breach of contract under Colorado law, a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the

10

plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Plaintiff alleges that the defendants breached three different contracts. First, Plaintiff alleges the defendants breached the "InterestOnly" Adjustable Rate Note, which was the original note and deed of trust associated with the purchase of his property. (Doc. No. 3 at 17, ¶¶ 72–78.) However, Plaintiff concedes that contract was "entered into on March 03, 2004 by Plaintiff and American Mortgage Network, Inc." (*Id.*, ¶ 73.) Plaintiff also seems to dispute that Defendant BOA has any interest in the original note. (*Id.,* ¶ 78.) Therefore, because Plaintiff has failed to allege that the defendants were contracting parties to the original note and deed of trust, he has failed to state a claim for breach of that contract.

Moreover, Plaintiff has failed to provide any factual allegations to support any one of the four elements necessary to state a breach of contract claim as to the original note. The only allegations stated are conclusory in nature. (*See id.*, ¶¶ 72–78.) Plaintiff merely alleges that the defendants "engaged in conduct" regarding the terms and conditions of the note, primarily including misleading and misrepresenting material facts. (*See id.*) Such allegations qualify only as bare assertions and are not sufficient to state a claim. *See Iqbal*, 129 S. Ct. at 1949.

Plaintiff next alleges that the defendants breached the loan modification agreement, again by misleading and misrepresenting material facts about the terms and conditions of the agreement. (*See* Doc. No. 3, ¶¶ 79–83.) Plaintiff also alleges the defendants breached the loan modification by "demanding different terms, different payments in excess of the amount agreed

to and by foreclosing on [Plaintiff's] home." (*Id.*, ¶ 83.) Once again, these vague and conclusory allegations are insufficient to state a claim for breach of contract. *See Iqbal*, 129 S. Ct. at 1949.

Finally, Plaintiff alleges that the defendants breached a "forebearance agreement." (*See* Doc. No. 3, ¶¶ 84–89.) However, Plaintiff alleges only that he was "assured" by the defendants that they had "granted him a 'Special Forebearance.' " (*Id.*, ¶ 85.) Plaintiff seems unsure whether any forebearance agreement existed, stating, "[BOA] breached the terms, conditions and effect of a special forebearance by continuing its efforts to move his home towards foreclosure during the period of the forebearance agreement, <u>if any</u>." (*Id.*, ¶ 86.) Thus, the court finds Plaintiff has failed to allege that there was a contract.

Based on the foregoing, Plaintiff's breach of contract claims are dismissed.

### E.    *Claim for Breach of Fiduciary Duty*

Defendants argue Plaintiff's breach of fiduciary claim fails because the defendants owed Plaintiff no duty.

To recover for a breach of fiduciary duty, Plaintiff, *inter alia*, must establish that the defendants and the plaintiff were in a fiduciary relationship and that the defendants owed the plaintiff a duty. *F.D.I.C. v. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1476 (D. Colo. 1996.) In the absence of special circumstances, the relationship between a lending institution and its customer is merely one of creditor and debtor. *Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2007).

> While there is no *per se* fiduciary relationship between a borrower and lender, a fiduciary duty may arise from a business or confidential relationship which impels or induces one party "to relax the care and vigilance it would and should have ordinarily exercised in dealing with a stranger." "A confidential relationship arises when one party has justifiably reposed confidence in another." . . . [A] fiduciary relationship between a borrower and lender has been found to exist where there is a repose of trust by the customer along with an acceptance or invitation of such trust on the part of the lending institution.

*Dolton v. Capitol Federal Savings & Loan Association*, 642 P.2d 21, 23–24 (Colo. App. 1981) (citations omitted); *see also Rubenstein v. South Denver Nat'l Bank*, 762 P.2d 755, 756 (Colo. App. 1988). A confidential relationship may arise under circumstances in which a person occupies a superior position over another with the opportunity to use that superiority to his advantage over the other. *United Fire & Casualty Co. v. Nissan Motor Corp.*, 164 Colo. 42, 433 P.2d 769 (1967).

Here, Plaintiff apparently believes the defendants owed him a duty because "they knew [he] was suffering from traumatic brain injuries." (Doc. No. 3, ¶ 91.) Plaintiff also alleges that Defendant BOA "was in a superior and/or inherently unequal informational, financial, negotiating and/or bargaining position." (*Id.*, ¶ 92.) However, the fact that Plaintiff had a brain injury does not place a higher duty upon the defendants to safeguard the plaintiff's interests. In order to be liable the superior party must assume a duty to act in the dependent party's best interest. *See Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817 (10th Cir. 1986) (recognizing that fiduciary liability requires not only a repose of trust, but an assumption of a duty and breach of that duty); *First Nat'l Bank of Meeker v. Theos*, 794 P.2d 1055 (Colo. App. 1990) (same). Here, Plaintiff does not allege facts showing a voluntary assumption of such duty

by defendants. Moreover, Plaintiff has not alleged that there was any acceptance or invitation of a repose of trust. *Dolton*, 642 P.2d at 24.

Because Plaintiff has not come forward with facts that would establish a cause of action for breach of fiduciary duty against the defendants, the claim fails and is dismissed.

### F.   *Claim for Violation of RESPA*

Defendants argue that Plaintiff's RESPA claim is insufficiently pleaded. In his Complaint, Plaintiff contends that the defendants violated RESPA by failing to respond to his "qualified written request" for an "investigation of misrepresentations made by [Defendant BOA] with respect to his mortgage account and foreclosure . . . ." (Doc. No. 3, ¶ 100.)

The purpose of RESPA is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans. 12 U.S.C. § 2601(a). If a loan servicer receives a qualified written request ("QWR") from the borrower seeking information relating to the servicing of a loan, the servicer must provide a written response acknowledging the correspondence within 20 days. 12 U.S.C. § 2605(e)(1)(A). A QWR must "include[ ], or otherwise enable[ ] the servicer to identify, the name and account of the borrower" and "include[ ] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Furthermore, "a letter cannot be 'qualified' under the statute if it does not relate to the servicing of the account." *Harris v. American General Finance, Inc.*, No. Civ. A. 02-1395-MLB, 2005 WL 1593673, at*3 (D. Kan. July 6, 2005). The statute defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to

the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3).

Plaintiff's RESPA claim fails because his letter requesting an investigation of misrepresentations allegedly made by Defendant BOA does not qualify as a QWR under RESPA. Accordingly, Plaintiff's RESPA claim is dismissed.

### G.     *Claim for Intentional Infliction of Emotional Distress*

Defendants argue Plaintiff's claim for intentional infliction of emotional distress must fail because Plaintiff alleges no outrageous conduct on the part of the defendants.

Colorado law recognizes a cause of action for outrageous conduct (sometimes called "intentional infliction of emotional distress"). Under Colorado law, the elements of the tort of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) causing the plaintiff severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). "[T]he level of outrageousness required [to create liability for this tort] is extremely high: . . . the conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper*, 877 P.2d at 883. As for the intent element of the tort,

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result. A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Culpepper*, 877 P.2d at 882–83.

Plaintiff alleges that Defendants' "misrepresentations" and its "statements, conduct and practices" caused him emotional harm. (Doc. No. 3, ¶¶ 62, 68–69.) However, the "conduct" generally described in the Complaint does not plausibly rise to the level of "extreme or outrageous" conduct actionable under the tort. Moreover, Plaintiff does not assert that Defendants acted either intentionally or recklessly.

Thus, Plaintiffs have failed to plausibly plead a claim for intentional infliction of emotional distress, and the claim is dismissed.

### H.     *Leave to Amend*

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109–10.

Plaintiff is proceeding *pro se* and has not been previously granted leave to amend. In determining whether additional leave to amend would cure the deficiencies of Plaintiff's claims,

the court looks at each category of claims in turn.  As to the tort claims against Defendant Moynihan, the court finds amending the complaint would be futile because Plaintiff seeks to hold Defendant Moynihan liable only because of his position as Chief Executive Officer of Bank of America Corporation.  There is absolutely no factual support for the proposition that Defendant Moynihan "approved of, sanctioned, directed, actively participated in, or cooperated in" any of the alleged wrongdoing.  *Hoang*, 80 P.3d at 868.  Similarly, as to the contract claims against Defendant Moynihan, the court finds amending the complaint would be futile because Defendant Moynihan cannot be held liable for the contracts of the corporation, nor can he be personally liable for breach of contract to which neither BOA nor Moynihan were parties.  Finally, the court finds amending the complaint to reassert the breach of fiduciary duty claim would be futile, as the there was no fiduciary relationship between Plaintiff and the defendants, and amendment to the RESPA claim would be futile because it is clear that Plaintiff's letter to the defendants did not relate to the servicing of his account, and thus it was not legally a QWR.  Plaintiff's emotional distress claim is similarly deficient, as Plaintiff failed to describe any circumstances that were plausibly "extreme or outrageous."  Although it is always theoretically possible that more information could be found in the course of discovery, the applicable pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *See Iqbal*, 129 S. Ct. at 1949.

However, as to the fraudulent misrepresentation claim, the court finds that Plaintiff should be allowed to move to amend his complaint.  However, to the extent Plaintiff wishes to amend and reassert a properly pleaded fraudulent misrepresentation claim, he must follow the

mandates of Rules 8 and 9 as explained *supra*.  As to the breach of contract claims, the court also finds Plaintiff should be allowed to move to amend, but only to the extent he wishes to reassert the claim related to the alleged breach of the loan modification agreement.  To allow amendments of the breach of contract claims related to the original note and the forebearance agreement would be futile.

**WHEREFORE**, it is

**ORDERED** that "Defendants' Renewed Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 27) is **GRANTED**.  It is further

**ORDERED** that Plaintiff may file, within twenty days of this Order, a motion to amend the complaint, along with a proposed Amended Complaint asserting only the fraudulent misrepresentation claim and the breach of contract claim related to the loan modification agreement.  The court will withhold entering final judgment at this time.  If Plaintiff timely files a motion to amend his complaint to cure the deficiencies and to assert the fraudulent misrepresentation and breach of contract claims, the court will then enter final judgment only if it denies the motion.

Dated this 17th day of December, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge