# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No.:** 1:12-cv-00459-KMT

JAMES P. TATTEN, individually.

      Plaintiff,

v.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.; and
BAC HOME LOANS SERVICING, LP,

      Defendants.

---

## AMENDED COMPLAINT

---

*Pro se* Plaintiff, James P. Tatten (hereinafter "Tatten" or "Plaintiff") files this Amended Complaint against Defendant Bank of America Corporation, and Defendant Bank of America N.A., Defendant BAC Home Loans Servicing LP, (collectively "Defendants") and alleges and avers as follows:

## I.  INTRODUCTION

1.      Tatten commenced this civil action in state court for damages and relief caused by Defendants' acts and omissions.  The state civil action was removed to this Court.  Tatten is a cognitively-disabled litigant, who brought this action to protect his rights; his real property; his health; his safety and his welfare.

## II. JURISDICTION AND VENUE

2.      Pursuant to 28 U.S.C. § 1332(a), the District of Colorado has original jurisdiction

over this civil action because the matter in controversy exceeds the sum or value of $75,000.00
and is between citizens of different states.

3.      Pursuant to 28 U.S.C. § 1391(b), the District of Colorado is the proper venue for
this civil action because a substantial part of the events and omissions giving rise to the claims
occurred in the District; the Plaintiff resides in the District; Defendants solicit, transact or are
doing business in the District; and the subject-matter real property is located in the District.

### III. PARTIES

4.      Tatten is domiciled in the District of Colorado and resides at 8681 East 29th
Avenue, Denver, Colorado.

5.      Bank of America Corporation is a foreign corporation with its principal place of
business located in Charlotte, North Carolina.  Bank of America is believed to be the parent
corporation of Bank of America, N.A., and a successor-in-interest to Countrywide Financial.
At all times relevant, Bank of America Corporation, directly and/or indirectly through agents,
employees, subsidiaries and/or related companies held, serviced and or engaged in transactions
and business in the State of Colorado.

6.      Defendant Bank of America N.A is a national banking association with its
principal place of business located in Charlotte, North Carolina.  Bank of America N.A. is a
parent company, which controls and directs the operations of its subsidiaries.  At all times
relevant, Bank of America N.A. directly or indirectly through subsidiaries or related companies
held, serviced or engaged in transactions and business in the State of Colorado.

7.      Defendant BAC Home Loans Servicing, L.P., is a limited partnership and
subsidiary of Defendant Bank of America N.A. with its principal place of business located in
California.  BAC Home Loan Servicing has been merged into Bank of America N.A.  BAC

Home Loans Servicing did business under the name Countrywide Home Loans Servicing, L.P. At all times relevant, BAC Home Loans Servicing directly or indirectly held, serviced and engaged in transactions and business in the State of Colorado.

## IV. FACTUAL ALLEGATIONS

### November 2008

8.     On November 07, 2008, Tatten suffered a traumatic brain injury.  Tatten's brain injury reduced competency concerning decisions of a personal, medical, legal and/or financial nature.  Defendants were notified of Tatten's brain injury on or about November 19, 2008, by Robert Tatten, Steven Morris and/or Nicole Wiederaenders.

9.     Payments were made to account 8449 for November 2008, December 2008 and January 2009.

### January 2009

10.     On January 21, 2009, Countrywide Bank, predecessor-in-interest to Bank of America, sent a letter to Tatten, which states:

> Countrywide Home Loans has recently received an authorization request from Stephen M. Morris for access to your loan information...Although we can discuss your loan information with Stephen M. Morris, only the parties named in the Note are authorized to many any changes to the loan information.

### February 2009

11.     On February 17, 2009, Countrywide Bank Home Loan sent a letter to Tatten, which states:

> The loan is in serious default because the required payments have

not been made...Countrywide must receive the amount of $4,541.54 plus any...on or before March 19, 2009...Countrywide may, enter upon and conduct an inspection of your property...and/or (iii) determine the identity of the occupant.

## April 2009

12.     On April 08, 2009, Countrywide sent a letter to Tatten, which states:

Our records indicate you may still qualify for a mortgage refinance at today's low rates. Refinancing into a new loan - while rates are low - could be a smart move. You could potentially lower your monthly payment and improve your home financing situation...

13.     On April 29, 2009, Bank of America Home Loans sent a letter to Tatten, which states:

BAC Home Loans Servicing, LP services your home loan on behalf of the holder of your note (Noteholder). This is to advise you that your account remains seriously delinquent. If we do not hear from you immediately…BAC Home Loans Servicing, LP will proceed with collection action until your account is brought fully current, and you will be responsible for all costs incurred in this process to the full extent permitted by law.

## June 2009

14.     On June 02, 2009, Angela Spiekermann, Office of the Chairman of Bank of America, told Tatten that (1) she was his point of contact regarding account 8449, (2) his home was not in foreclosure and (3) Bank of America will suspend the monthly mortgage payments during the loan modification process. Spiekermann directed Tatten to not make a payment to receive the best financial and modification options and products available.

15.     On June 13, 2009, Tatten telephoned Bank of America at (877) 744-7691 and spoke to Dawn.  Dawn told Tatten that his loan was in foreclosure and a sale date was being scheduled.

16.     On June 15, 2009, the law firm Castle Meinhold & Stawiarski, LLC, sent a letter to Tatten stating the firm had been retained to initiate foreclosure proceedings.

17.     On June 16, 2009, Spiekermann sent a letter to Tatten stating:

> Please note that in order to further review your request for payment assistance, the following information is required:  Letter or hardship; Proof of Income (last two months); Bank statements (last two months); Breakdown of monthly expenditures.
> <u>Spiekermann's letter is attached to this complaint as Exhibit 1.</u>

18.     On June 18, 2009, the Public Trustee, City and County of Denver, sent Tatten a COMBINED NOTICE OF SALE AND NOTICE OF RIGHTS TO CURE OR REDEEM.

19.     On June 24, 2009, Bank of America Home Loans sent Tatten a letter, which states:

> Everyone goes through difficult times.  That's when you need someone on your side the most.  BAC Home Loans Servicing, LP (the subsidiary of Bank of America that services your mortgage) wants to help homeowners have affordable mortgage payments and stay in their homes by taking advantage of a new government program...

20.     On June 26, 2009, Tatten telephoned Bank of America Home Loans at (800) 669-6650 to discuss the Home Affordable Modification Program and other modifications options.

21.     On June 30, 2009, Tatten sent an eighteen-page fax to Spiekermann.  Tatten's fax included a letter of hardship.  Tatten's letter of hardship states:

Because of the aggressive and accelerated actions of Bank of America, my home has been placed on the market for sale. Predictably, the actions of Bank of America have had a negative effect on the sale of my home...

22.     Tatten also faxed Spiekermann a request to stay on June 30, 2009, which states:

In response to your letter, dated June 16, 2009, I have provided Bank of America with documentation of the cause, nature and extent of my injuries.   Should you need additional information or documentation, I will forward it to you immediately...

23.    On June 30, 2009, Bank of America Home Loans sent Tatten a letter, which states:

Because you home loan is delinquent, it has been referred to BAC Home Loans Servicing LP's Foreclosure Management Committee for review.  This does not necessarily mean the end of your home ownership dreams...it is important that you understand the ways in which this process may be stopped...We want to help you keep your home.  Please call us today.

**July 2009**

24.     On July 01, 2009, Tatten spoke to Terri Barragan, Bank of America, at (800) 405-0078.  In that conversation, Barragan told Tatten that (1) his home was not in foreclosure, (2) account 8449 was in special forbearance, (3) Bank of America suspended the monthly mortgage payments and (4) payment is not required until a loan modification is approved.

25.     On July 27, 2009, Barragan telephoned Tatten.  Barragan directed Tatten to fax financial information to (866) 603-4755.  During the conversation, Barragan told Tatten that (1) his home is not in foreclosure, (2) there was a special forbearance, (3) Bank of America would

not continue to foreclosure, (4) Bank of America will suspend monthly mortgage payments and (5) a payment is not required until a loan modification is approved.

26.      On July 27, 2009, Tatten participated in a conference call with Spiekermann and Anthony L. Converse, Esq., Castle Meinhold & Stawiarski. During the call, Spiekermann repeatedly stated to Tatten and Converse that account 8449 (1) was a special forbearance, (2) should not be in foreclosure, and (3) was being expedited through the loan modification process.

27.      On July 28, 2009, Tatten faxed Barragan a twelve-page document at (866) 603-4755. The fax included Tatten's bank statements and tax returns.

28.      In July and August 2009, Tatten had telephone conversations with Tom Tynnan, Bank of America, Foreclosure Technician, at (972) 526-6909 or (469) 201-0684. In each conversation, Tynnan told Tatten that account 8449 should not be in foreclosure according to Bank of America's standards and practices.

**August 2009**

29.      On August 04, 2009, Castle Meinhold & Stawiarski filed a MOTION FOR ORDER AUTHORIZING SALE and NOTICE OF HEARING with the District Court.

30.      On August 14, 2009, the Office of the Clerk and Recorder, Public Trustee, City and County of Denver, sent Tatten a COMBINED NOTICE OF SALE AND NOTICE OF RIGHTS TO CURE OR REDEEM.

31.      On August 17, 2009, Deanne Stodden, Castle Meinhold & Stawiarski, told Tatten that the client directed the firm to "place a hold" on the foreclosure.

32.      On August 18, 2009, Stodden sent an email to Tatten stating:

> "...as we discussed yesterday on the phone, attached please find the motion to place the rule(sic) 120 case in suspense that was filed

earlier today along with the proposed order...

33.     On August 29, 2009, Tatten received modification documents from Bank of America, Home Loans Servicing directing Tatten to review, sign, notarize and deliver the agreement to Bank of America, Home Loans Servicing, on or before September 28, 2009.

34.     On August 29, 2009, Bank of America, Home Retention Division, BAC Home Loans Servicing, sent a letter to Tatten stating:

> The enclosed modification agreement fixes your interest rate at 2.625% and result in a new monthly payment amount of $1,586.00. This rate will take effect on 1st day of October, 2009....New payment effective date November 1, 2009.

### September 2009

35.     On September 08, 2009, Tatten spoke to Bank of America's Home Retention Division and was told account 8449 did not qualify for a modification and was in foreclosure.

36.     On September 17, 2009, Tatten telephoned Spiekermann.  Spiekermann stated to Tatten that account 8449 was not in foreclosure and was in the process of modification.

37.     On September 17, 2009, Bank of America, Home Loans, sent a letter to Tatten which states:

> We mutually agreed upon a Special Forbearance with the suspended payments on the account listed above.  Our records indicate that the required payment has not been received.   BAC Home Loans Servicing, LP regrets to inform you that we are canceling the Special Forbearance because the required payments have not been received.  The cancellation is effective immediately.
> <u>Bank of America's letter is attached to this complaint as Exhibit 2.</u>

38.     On September 18, 2009, Tatten telephoned Barragan.  Barragan stated account 8449 was not in foreclosure and was in the process of modification.

39.     On September 22, 2009, Defendants' attorney, Stodden, sent an email to Tatten stating:

> "I wanted to advise you that our client has instructed our office to proceed with the foreclosure of the property located at 8681 East 29th Avenue."

40.     On September 23, 2009, Tatten replied to Stodden by stating:

> Your email is in direct conflict with the statements, documents, information, guidance and offers directed and/or provided to me by Bank of America...

> Bank of America assured me that 'my account was on hold'; Bank of America assured me that foreclosure proceedings would not be pursued...

> I have trusted and relied on the statements, documents, information and offers directed and/or provided to me by Bank of America...

41.     On September 23, 2009, Tatten called Spiekermann.  Spiekermann told Tatten that (1) the home was not in foreclosure, (2) there was a special forbearance (3) the LOAN MODIFICATION AGREEMENT was payment assistance from Bank of America, (4) signing the LOAN MODIFICATION AGREEMENT would stop foreclosure and (4) a payment was not required until November 01, 2009.

42.     On September 23, 2009, Tatten called Tynnan.  Tynnan told Tatten that his home should not be in foreclosure and a modification would stop foreclosure.

43.     On September 25, 2009, Stodden sent an email to Tatten stating:

> "At this time, our client has instructed us to motion the court to retain the Rule 120 case in suspense for an additional 30 days."

44.     On September 26, 2009, Tatten received a call from Maureen Connelly, Bank of America's HOPE Team.  Connelly told Tatten she called to determine if he had accepted the loan modification.  Connelly told Tatten that if he didn't accept and sign the modification he would likely lose his house.

45.     On September 28, 2009, Tatten signed, notarized and delivered the LOAN MODIFICATION AGREEMENT (5-1 ARM 10 Year 10) to Bank of America, Home Loans.

The AGREEMENT is attached to this complaint as Exhibit 3.

46.     On September 29, 2009, Tatten spoke to Jeanette Martinez, Bank of America, at 800-601-2522.  Martinez told Tatten that account 8449 qualified for a loan modification.

47.     On September 29, 2009, Defendants' attorney, Stodden, sent an email to Tatten, which states:

> "...We realize that you are upset by the events which have transpired, however, please understand that we and our client remain willing to assist in resolving this matter without the need for litigation.

48.     On September 29, 2009, Tatten replied to Stodden stating:

> Please advise your client, Bank of America N.A. and your firm that several statements, facts, characterizations and descriptions contained in your email are false, misleading…

**October 2009**

49.     On October 05, 2009, Bank of America, Home Loans, sent Tatten a home loan statement for $2,139.18, effective December 2009.

50.     On October 08, 2009, Defendants' attorney, Stodden, replied to Tatten stating:

"...the Rule 120 proceeding has been placed in suspense.  As such, our client has not obtained an order authorizing sale.

51.     On October 08, 2009, Tatten emailed Stodden stating:

…your written answer is in direct conflict with the statements that I received today, from the Office of Public Trustee, and yesterday, from the Office of the Chairman, Bank of America....

52.     On October 12, 2009, Tatten emailed Stodden stating:

Why has Castle, Meinhold & Stawiarski set an auction date of November 5, 2009 for the Public Trustee's sale of my home at 8681 East 29th Avenue?

53.     On October 12, 2009, Stodden emailed Tatten stating:

We will be withdrawing the foreclosure with the Denver County Public Trustee and dismissing the C.R.C.P. Rule 120 action…

54.     On October 26, 2009, Bank of America sent Tatten a home loan statement for $3,209.31, effective November 01, 2009.

### November 2009

55.     On November 09, 2009, Bank of America sent a letter to Tatten stating:

IMPORTANT MESSAGE ABOUT YOUR LOAN

We recently received your request for financial assistance.  We regret to inform you that there are no available workout options

based on the financial information that was provided.

<u>Bank of America's letter is attached to this complaint as Exhibit 4.</u>

56.     On November 10, 2009, Bank of America, Home Retention Division, sent Tatten a home loan statement for $5,629.49, as of the date of the letter.

57.     On November 24, 2009, Tatten telephoned Bank of America, Home Retention Division, at (800)-669-0102.  Bank of America stated that the amount due was $5,127.90.

58.     On November 27, 2009, Bank of America, Home Loans, sent Tatten a home loan for $1,914.83, due on December 01, 2009.

## December 2009

59.     On December 23, 2009, Bank of America, Home Loans, sent Tatten a NOTICE OF INTENT TO ACCELERATE.  The notice states the amount required to reinstate the loan was $4,262.00

## January 2010

60.     On January 04, 2010, Plaintiff Tatten spoke to Greg, Office of the Chairman of Bank of America, concerning the status of account 8449 and Bank of America's foreclosure policies and practices.  Greg told Tatten that a foreclosure cannot go forward if the account is being reviewed for a loan modification.  Greg also stated that Bank of America did not engage in the practice of "dual-tracking".

61.     On January 11, 2010, Daniel Whitehead sent Tatten a letter stating:

As we discussed, a modification was approved and completed on your loan on October 6, 2009.

This letter will further confirm your October 1, 2009 payment is due for $1,869.01.

Whitehead's letter is attached to this complaint as Exhibit 5.

## V.  CLAIMS FOR RELIEF

### First Claim for Relief:  Breach of Contract

62.    Tatten repeats and incorporates by reference each allegation contained in the paragraphs above.

63.    Tatten and BAC Home Loans Servicing, LP entered into a contact, LOAN MODIFICATION AGREEMENT (5-1 ARM 10 Year IO), on October 06, 2009.

64.    On September 28, 2009, Tatten signed and delivered LOAN MODIFICATION AGREEMENT (5-1 ARM 10 YEAR IO) to BAC Home Loans Servicing.  *See:* Exhibit 3.

65.    On November 09, 2009, BAC Home Loans Servicing notified Tatten that there were no workout options for financial assistance based on the financial information provided.

66.    On January 11, 2009, Bank of America provided written notice to Tatten that LOAN MODIFICATION AGREEMENT (5-1 ARM 10 Year IO) was approved and completed on October 06, 2009.  *See:* Exhibit 5.

67.    BAC Home Loans Servicing did not inform Tatten that LOAN MODIFICATION AGREEMENT (5-1 ARM 10 YEAR IO) was accepted and completed until January 2010.

68.    To date, BAC Home Loans Servicing has not provided Tatten with a complete and true statement of  material terms, conditions and costs pertaining to the signed and accepted LOAN MODIFICATION AGREEMENT (5-1 ARM 10 Year IO).

69.    To date, BAC Home Loan Servicing has provided Tatten with different statements and different amounts due and payable to BAC Home Loan Servicing.

70.    BAC Home Loan Servicing's failure to provide Tatten with a complete and true

statement relating to the acceptance, terms, conditions and costs governing account 8449 and

LOAN MODIFICATION AGREEMENT (5-1 ARM 10 Year IO) caused delay, damage and/or

prevented Tatten's performance.

71.     Without limitation, Tatten's damages resulting from the foregoing include loss of

equity in his home, costs and expenses related to his rights and his property, reduced credit

scores, unavailability of credit, reduced availability of goods, services and jobs.

### Second Claim for Relief:  Fraud

72.     Tatten repeats and incorporates by reference each allegation contained in the

paragraphs above.

73.     Defendants, by and through Spiekermann, Barragan and others, made false

statements of material facts in September 2009 to entice, mislead and/or deceive Tatten into

modifying a home loan with BAC Home Loans Servicing by stating and assuring to him the

following:

        a.     The foreclosure is stopped;

        b.     The account is a special forbearance;

        c.     The mortgage payments are suspended through October 2009;

        d.     The modification is payment assistance;

        e.     The modification stops foreclosure; and

        f.     A payment is not required until November 01, 2009.  *See:* Exhibit 2.

74.     Tynnan told Tatten account 8449 should not be in foreclosure according to Bank

of America's standards and practices.

75.     Tatten relied on the statements set-forth above and therefore signed the LOAN

MODIFICATION AGREEMENT (5-1 ARM 10 YEAR IO), on September 28, 2009.

76.     The Defendants actively advanced the foreclosure action on account 8449.

77.     Without limitation, Tatten's damages resulting from the foregoing include the loss of equity in his home, costs and expenses related to his rights and property, reduced credit scores, unavailability of credit, reduced availability of goods, services and jobs.

## REQUEST FOR RELIEF

**WHEREFORE**, for the reasons set-forth herein, Tatten prays this Honorable Court enter judgment against the Defendants for the claims set-forth above, and award the following:

1.      Plaintiff's economic damages;

2.      Plaintiff's non-economic damages; and

3.      Any other and further relief, either at law or in equity, general or special, to which he may be entitled.

Dated this 17th day of January, 2013.

BY:     */s/  James P. Tatten*

James P. Tatten
8681 East 29th Avenue
Denver, CO 80238
(720) 256-3686
jimtatten@yahoo.com

*Pro se* Plaintiff

# EXHIBIT 1

**Bank of America** 🇺🇸

_- more -_ (handwritten)

Office of the Chairman

June 16, 2009

James P Tatten
8681 East 29th Avenue
Denver, CO  34683

Subject: Bank of America Home Loan Number ending in: 8449

Dear Mr. Tatten:

This correspondence is pursuant to your phone call on June 2, 2009, addressed to our executive offices, regarding your above-referenced home loan. Regrettably, my recent attempt to contact you to further discuss your concerns was unsuccessful.

Please note that in order to further review your request for payment assistance, the following information is required:

- Letter of hardship
- Proof of income (last two months)
- Bank statements (last two months)
- Breakdown of monthly expenditures

Please forward this information to the attention of the undersigned via facsimile at 1.800.658.9364, no later than June 25, 2009. It is important for you to know that assistance is not guaranteed and is dependent on several factors; however, Bank of America will consider every option in an effort to assist you.

In the event you should require additional assistance, please feel free to contact me directly at 1.800.669.2443, extension 5210. Thank you for this opportunity to be of service.

Sincerely,

Angel Spiekermann
Customer Advocate
Office of the Chairman

_FAX # 805 - 520 - 5421_ (handwritten)
_PH._   _- more -_ (handwritten)

_"Credit card shll separate"_ (handwritten)

Recycled Paper

# EXHIBIT 2

**Bank of America** 

**Home Loans**
P. O. Box 10222
Van Nuys, CA 91410-0222

Send Payments to:
P.O. Box 650070
Dallas, TX 75265-0070

**Notice Date:** September 17, 2009

**Account No.:** 044178449

CGS50738261001
James P Tatten
8681 E 29th Ave
Denver, CO 80238-2666

**Property Address:**
8681 East 29th Avenue
Denver, CO 80238-2666

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

We mutually agreed upon a Special Forbearance to help with the suspended payments on the account listed above. Our records indicate that the required payment has not been received.

BAC Home Loans Servicing, LP regrets to inform you that we are canceling the Special Forbearance because the required payments have not been received. The cancellation is effective immediately.

**WHAT THIS MEANS TO YOU**

At this time, BAC Home Loans Servicing, LP will seek full payment of all amounts that are due on your loan, and may take other action as is permitted by law to protect its interest in the property. If foreclosure proceedings have begun prior to the Special Forbearance agreement, those proceedings will now continue.

**WHAT YOU NEED TO DO**

To avoid such action, please reinstate your account as soon as possible. We want to help during this difficult time. If you have encountered further hardship or need assistance, please contact our office at 1-800-669-6650. Your call is important, as other options may be available.

Thank you for your immediate attention to this matter.

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

Please write your account number on all checks and correspondence.

LMPCNL2 8498/9363 07/24/2008

# EXHIBIT 3

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

Doc ID #: 00044178449 MOD
-------------------------------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE------------------------------------------

## LOAN MODIFICATION AGREEMENT
### (5-1 ARM 10 Year IO)

This Loan Modification Agreement ("Agreement"), made 29th day of August, 2009, between JAMES P TATTEN (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 3rd day of March, 2004 and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 8681 EAST 29TH AVENUE , DENVER, CO 80238.

The real property described being set forth as follows:

**SAME AS IN SAID SECURITY INSTRUMENT, SEE ATTACHED EXHIBIT A**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of the 1st day of October, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $423,709.65, consisting of the amount(s) loaned to the Borrower by the Lender and which may include, but are not limited to, any past due principal payments, interest , fees and/or costs ("Unpaid Amounts") which you agreed are to be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement.

2. (a.) Monthly Payments During the Interest-Only Period, Interest Rate Change Dates, and Payments After the Interest-Only Period Ends:

   (i) Interest:
   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Each date on which Borrower's interest rate could change is called an "Interest Rate Change Date". Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.625% from the 1st day of October, 2009 to the September 30, 2014. Interest will be charged on the basis of a twelve-month year and a thirty-day month. The new rate of interest will become effective on each Interest Rate Change Date and Borrower will pay the amount of the new monthly payment beginning on the first monthly payment due date after the Interest Rate Change Date until the amount of Borrower's monthly payment changes again. The First Interest Rate Change Date is 1st day of October, 2014 and the adjustable interest rate Borrower will pay may change on that day every twelfth month thereafter. Borrower's new adjustable interest rate will be determined by applying the Margin, Index, and rate change calculation method provided in the Note.

   (ii) Payments:
   The date on which Borrower will be required to make a first payment consisting of both principal and interest ("First Principal and Interest Payment Due Date") shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $1,586.00 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period). On and after the First Principal and Interest Payment Due Date, and until principal and interest are paid in full, Borrower shall make monthly payments of principal and interest and other charges described in the Note and Security Instrument. If on the 1st day of March, 2034 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

   (b.) Impact of this Agreement on the new Interest-Only Payment and on the Amount of Interest Borrower will pay over the life of the loan;

   Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the  interest rate in effect. .Borrower also understands that this means interest will now accrue on the unpaid interest , and that this would not happen without this Agreement.

   Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan.  The Interest-Only payment amount Borrower owes now may therefore be higher unless the interest rate has been lowered.  This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

   (c.) Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period -- the First Principal and Interest Payment Due Date:

   After the Interest-Only Period ends, Borrower understands the monthly payment will increase—even if Borrower's interest rate stays the same—because Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts Due being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly



8108  08/09

payment. Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time Borrower will no longer have the choice of paying only the Interest-Only monthly amount. **Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.**

(d.) Understanding the Monthly Statement during the Interest-Only Period

Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period has added features to offer more than the Interest Only Payment. Although Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, Borrower also understands he or she has the choice to pay other amounts, which will assist Borrower in paying down the principal balance. If Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount Borrower owes (assuming there has been no change in the interest rate on Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. Borrower understands that paying more and reducing principal can also mean that Borrower will build equity in the home more quickly. Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice in the Interest-Only monthly statement provide Borrower with several easy ways each month to select a payment that reduces Borrower's principal.

3.  The Borrower will make such payments at Payment Processing  PO Box 650070  Dallas, TX 75265 or at such other place as the Lender may require.

4.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5.  ~~In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing,~~ Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_James P Tatten_ Dated: 09/28/09
JAMES P TATTEN

STATE OF Colorado

COUNTY OF Denver

On 9/28/09 before me, Dennis L. Richards Notary Public, personally appeared
James P Tatten

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Dennis L. Richards_
Signature

8108  08/09

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BAC Home Loans Servicing, LP

By: _____          Dated: _____

_____          _____

STATE OF _____

COUNTY OF_____

On _____ before me, _____Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature



8108 08/09

# EXHIBIT 4



**Bank of America**

**Home Loans**
Customer Service Department, CA6-919-01-41
PO Box 5170
Simi Valley, CA 93062-5170

*Important*

**Notice Date:** November 9, 2009

**Account No.:** 44178449

James P. Tatten
8681 E 29th Ave
Denver, CO  80238

**Property Address:**
8681 East 29th Avenue
Denver, CO  80238

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

We recently received your request for financial assistance.  We regret to inform you that there are no available workout options based on the financial information that was provided.

**WHAT YOU NEED TO DO**

While we regret that we are unable to assist you currently, if your financial situation changes, please contact our office with the updated information.  In the meantime, you will be required to make your monthly payment by the 1st of each month in accordance with your Note.

Your loan has a 15 day grace period before late charges are applied.  Failure to maintain timely payments may affect our ability to assist you in the future so we do encourage you to continue to make your payments on time.

**THANK YOU FOR YOUR BUSINESS**

You are a valued customer at BAC Home Loans Servicing, LP.  It is our continued goal to provide our customers with the highest level of customer satisfaction.

If you need further assistance, please contact our Home Retention Department directly at 1-800-669-0102.

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

WOPKG Declined  11373  09/25/09

# EXHIBIT 5



Home Loans

January 11, 2010

James P. Tatten
8681 E. 29th Ave.
Denver, CO 80238

Bank of America account ending: 8449

Dear Mr. Tatten:

This letter is in follow-up to telephone conversations concluding on January 8, 2010, regarding your home loan.

As we discussed, a modification was approved and completed on your loan on October 6, 2009. This letter will further confirm your October 1, 2009 payment is due for $1,869.01. This payment represents principal, interest, property taxes, and homeowner's insurance. Please refer to the escrow analysis mailed to you on January 5, 2010, for a detailed breakdown of escrow payment. Currently, your account is due for the October 2009, November 2009, December 2009, and January 2010 installments. Payments remitted via check should be mailed to our payment processing center at:

Bank of America
Mail Code: CA6-921-01-37
450 American St.
Simi Valley, CA 93065

For your convenience, Bank of America offers electronic alternatives for making monthly payments. For example, Bank of America can also accept payment electronically from various bill paying services such as Quicken and Checkfree.

Mr. Tatten, thank you once again for allowing me the opportunity to be of service. If you require further assistance, you may contact me directly at 1.805.955.7450, Monday through Friday, 8 a.m. to 5 p.m., Pacific.

Sincerely,

Daniel Whitehead
Assistant Vice President and Risk Operations Manager
Home Retention Customer Relations

450 American Street, Simi Valley, CA 93065

✿ Equal Housing Lender.

♻Recycled Paper

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**CERTIFICATE OF FILING AND SERVICE**
(CM/ECF)

I hereby certify that the foregoing document was filed electronically on January 17, 2013, with the Clerk of the Court using this Court's CM/ECF system, which will send notification of such filing to the following e-mail addresses:

justin.balser@akerman.com
melissa.cizmorris@akerman.com
victoria.edwards@akerman.com

AND, I hereby certify that I have sent a copy of the foregoing via email to the email addresses listed above.

DATED this 17th day of January 2013.

BY:     /s/ James P. Tatten

James P. Tatten
8681 East 29th Avenue
Denver, CO 80238
Telephone:  (720) 256-3686
e-mail:  jimtatten@yahoo.com

*Pro se* Plaintiff