**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:12-cv-00459-KMT

JAMES P. TATTEN, individually,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A., and
BAC HOME LOANS SERVICING, LP

    Defendants.

---

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Defendants Bank of America Corporation (**BOA**) and Bank of America, N.A., on behalf of itself and as successor-by-merger to BAC Home Loans Servicing, LP (**BANA**), by and through their undersigned attorneys, respectfully submit their motion to dismiss plaintiff James Tatten's (**plaintiff**) Amended Complaint (**FAC**) pursuant to FED. R. CIV. P. 12(b)(6).[1]

## I.    INTRODUCTION

Plaintiff brings this action to prevent the sale of his property, despite admitting that he has not made a payment toward his home loan since February 2009. In this vein, he brings causes of action for breach of contract and fraud. However, his claims fail as a matter of law and therefore the FAC must be dismissed with prejudice.

---

[1] Pursuant to D.C.COLO.LCivR. 7.1(a), defendants are not obligated to confer with plaintiff in an effort to resolve the disputed matters addressed herein, nor have they attempted to do so.

First, plaintiff's FAC fails against defendant BOA because he has not identified any wrongdoing by BOA or any theory under which BOA could be liable for the wrongdoing of its corporate subsidiary. Second, plaintiff's individual claims fail because he has plead no facts sufficient to support the elements of his claims. Fatally, plaintiff has not identify a breach of any term of any contract nor has plaintiff identified a single fraudulent statement made by BANA. For these reasons, and those more fully stated below, defendants respectfully request this Court dismiss plaintiff's FAC without leave to amend.

## II.    STATEMENT OF FACTS

On or about March 3, 2004, plaintiff obtained a loan from American Mortgage Network, Inc. (**AMN**) for $406,192.00. (the **Loan**)  (Req. for Judicial Notice (**RJN**) Ex. 1.)  The Loan was secured by a deed of trust recorded against property located at 8681 East 29th Avenue, Denver, Colorado 80238 (the **Property**).  (*Id.*)

Plaintiff alleges he suffered a traumatic brain injury in November 2008 and admits he has not made a payment toward the Loan since January 2009. (*See* FAC ¶ 9.)  In June 2009, BANA caused to be recorded a Notice of Election and Demand for Sale with the Denver County Recorder's Office (**NED One**). (RJN Ex. 2.)  Several months later, plaintiff entered into an agreement with BAC to modify his Loan (the **Loan Modification**). (FAC Ex. 2 at 2(ii).)  As a result, BANA withdrew NED One. (RJN Ex. 3.)

Plaintiff did not make a single payment under the Loan Modification. (*See* FAC ¶ 9; RJN Ex. 8 at 17:15-25.)  A year later, BANA recorded a second Notice of Election and Demand for Sale (**NED Two**). (RJN Ex. 4.)  Shortly thereafter, BANA commenced a C.R.C.P. Rule 120 action in Denver County District Court. (RJN Ex. 6.)  Following a hearing attended by plaintiff,

the Court authorized the sale of the Property. (RJN Ex. 7.) The Property has not been sold.

### III.   LEGAL STANDARD

#### A.   Fed. R. Civ. P. 12(b)(6).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept well-pleaded allegations as true and construe them in the light most favorable to plaintiffs. *See Fisher v. United Feature Syndicate, Inc*., 37 F. Supp. 2d 1213, 1215 (D. Colo. 1999), *aff'd* 203 F.3d 834 (10th Cir. 2000). However, a formulaic recitation of the elements, because of its conclusory nature, is not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *see Coburn v. Nordeen*, 72 F. App'x 744, 746 (10th Cir. 2003). Moreover, the Court may not assume a litigant can prove facts not alleged, or that the law was violated in ways not alleged. *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In order to survive dismissal, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Bonanno v. Quizno's Franchise Co.*, No. 06-cv-02358-WYD-KLM, 2008 WL 638367, at *2 (D. Colo. Mar. 5, 2008) (noting the heightened requirement plaintiffs must meet under *Twombly*). This means the pleading must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S. Ct. at 1949. "Naked assertions devoid of further factual enhancement" no longer suffice to state a claim. *Id.* (citations omitted).

#### B.   The Incorporation by Reference Doctrine and FED. R. EVID. 201

As stated above, the Court must take as true only the well-pleaded factual allegations of plaintiffs' complaint. That group of factual allegations includes documents he references, but

3

does not attach to his complaint. When a party references or attaches documents, those documents "are, in effect, incorporated in [the complaint]," and this Court may appropriately consider those referenced documents in deciding to dismiss claims. See *City of Boulder v. Public Serv. Co.*, 996 P.2d 198, 203 (Colo. App. 1999); *Walker v. Van Laningham*, 148 P.3d 391, 397 (Colo. App. 2006) ("In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the court may take judicial notice;" affirming the trial court's grant of defendant's Rule 12(b)(5) motion).

The Court need not assume however the truthfulness of plaintiff's unsupported factual allegations and other arguments that are flatly contradicted by documents attached to or referenced in the complaint. See *Mazz Consulting Group v. Canam Steel Corp.*, No. 08-CV-38(NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008) (when ruling on a Rule 12 (b)(6) motion, the court need not accept facts alleged in complaint as true if documents referenced in complaint contradict those allegations); *Bruhl v. Price Waterhousecoopers Int'l.*, No. 03-23044-Civ-MARRA, 2007 WL 997362, at *2 n.1 (S.D. Fla. Mar. 27, 2007) ("If an allegation in a complaint is based on a writing and the writing contradicts the allegation, the writing controls."); *Rapoport v. Asia Elec. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (dismissing plaintiff's claims on Rule 12(b)(6) motion because two documents to which complaint referred contradicted plaintiff's allegations in his complaint).

This Court can also consider matters of which it may take judicial notice. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) (quoting FED. R. EVID. 201(b)). "A court shall take judicial notice if requested by a party and supplied with the necessary information." FED. R. EVID. 201(d); *see, e.g.*, *Walker*, 148 P.3d at 397.

## IV. ARGUMENT

### A. Plaintiff Has Alleged No Wrongdoing by BOA.

Plaintiff's FAC must be dismissed at the onset to the extent it is brought against BOA. Throughout the entire FAC, plaintiff mentions BOA exactly one time. This single mention is to identify BOA as a party to the action and to state that it is the parent company of BANA. (FAC ¶ 5.) Thereafter, plaintiff identifies a number of telephone calls and correspondence between himself and employees at Countrywide Bank, N.A. (**Countrywide**); Countrywide Home Loans, LP (**CHL**); BAC; and BANA. (*See* FAC ¶¶ 8-61.) Not a single allegation concerns the actions of BOA or any of its employees or agents.

Nor has plaintiff alleged any facts that would hold BOA, as the alleged parent corporation of BANA, liable for the acts of its subsidiary. The general rule in Colorado is that absent a reason to justify disregarding the corporate form, a parent company is a legal entity completely separate from its subsidiaries. *Skidmore, Owings & Merrill v. Can. Life Assurance Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990) (citing *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974) and *New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp.*, 645 P.2d 868, 869 (Colo. App. 1982)). "[C]orporate veils exist for a reason and should be pierced only reluctantly and cautiously." *Cascade Energey v. Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir. 1990).

Determining whether to pierce the corporate veil is a mixed question of law and fact. *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 73 (Colo. App. 2009). In determining whether to pierce the corporate veil, the Court must make a three-part inquiry. *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006). First, the Court looks to whether the corporate entity is the "alter ego" of the entity in issue by analyzing whether "(1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for noncorporate purposes." *McCallum Family*, 221 P.3d at 74 (citing *Phillips*, 139 P.3d at 644).

Second, the Court looks at whether "justice requires recognizing the substance of the relationship between the person or entity sought to be held liable" over the corporate form because the corporate form was "used to perpetrate a fraud or defeat a rightful claim." *Id.* Last, the Court looks at whether piercing the corporate veil and holding the parent liable for the acts of the subsidiary would achieve an equitable result. *Id.*

Here, plaintiff provides absolutely no facts to justify piercing the corporate veil and holding BOA liable for the alleged wrongdoing of BANA. *First*, plaintiff provides zero facts to show BANA is merely the "alter ego" of BOA, i.e., that the funds and assets of BANA and BOA are commingled; the two maintain adequate corporate records; BANA is thinly capitalized; BANA is a "mere shell"; the two disregard legal formalities; or that any other factor weighs in favor of finding that the veil should be pierced. (*See* FAC.) *Second*, plaintiff has provided no facts establishing the corporate structure of BANA has been used to perpetrate a fraud or defeat

6

rightful claims brought against it. (*See* FAC.) *Last*, an equitable result would not be reached by disregarding the corporate form and holding BOA liable for the alleged wrongdoing of BANA. If anything, it would be inequitable to hold BOA liable for the acts of BANA, given that it had no involvement in those acts whatsoever. As a result, BOA should be dismissed from this lawsuit with prejudice.

### B. Plaintiff Has Not Identified a Breach of Contract.

Plaintiff's first cause of action alleges BANA breached the Loan Modification signed by plaintiff in September 2009. (*See* FAC ¶¶ 62-71.) To establish a breach of contract, a claimant must show: (1) the existence of a contract; (2) performance by the plaintiff, or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011).

Plaintiff has failed to state facts sufficient to establish his own performance or a breach of the Loan Modification. The Loan Modification makes clear plaintiff was obligated to make interest-only payments of $1,586.00 beginning November 1, 2009. (FAC Ex. 3 ¶ 2(ii).) However, plaintiff admits he made no payments under the Loan Modification. Although there may have been some confusion as to what payments were due, plaintiff does not allege he attempted to make any payment or reconcile these differences. Instead, plaintiff made absolutely *no payments whatsoever* at any point after January 2009. (FAC ¶ 9; RJN Ex. 8 at 17:15-25.) Because plaintiff failed to substantially perform his obligations under the Contract, his claim for breach of contract must fail.

Plaintiff's claim also fails because he has not identified any actual breach of the terms of the Loan Modification. *First*, plaintiff appears to allege BANA breached the Loan Modification

when it stated on November 9, 2009 that there were no workout options available to plaintiff. (FAC ¶ 65.) Assuming plaintiff argues this is an repudiation of the contract, it is clear that as of that date plaintiff had already failed to substantially perform under the Loan Modification and thus BANA's performance was excused as a matter of law.

*Second*, plaintiff states BANA breached the Loan Modification by not notifying him that it was "accepted and completed" until January 2010. (FAC ¶ 67.) However, the terms of the Loan Modification do not state BANA was required to notify plaintiff it received his signed documents. (FAC Ex. 3.) Further, a review of the entire package received by plaintiff on August 28, 2009 reveals that, if plaintiff signed, notarized, and returned the documents by September 28, 2009, the Loan Modification would be in effect. (RJN Ex. 7, at 1-2.) Plaintiff alleges that he did this. (FAC ¶ 45.) Therefore, there would have been no reason for BANA to further notify plaintiff the Loan Modification was "accepted and completed."

Plaintiff next alleges BANA breached the Loan Modification because to date it "has not provided [plaintiff] with a complete and true statement of material terms, conditions and costs pertaining to the signed and accepted [Loan Modification]." (FAC ¶ 68.) However, this allegation is directly contradicted by the plain terms of the Loan Modification. For example, the Loan Modification notifies plaintiff the principal balance of the modified loan was $423,709.65. (FAC Ex. 3 ¶ 1.) The Loan Modification further states plaintiff would be required to make monthly, interest-only payments of $1,586.00 due on the first day of every month starting on November 1, 2009, and that interest would accrue on the modified loan at rate of 2.625% between October 1, 2009 and September 30, 2014. (*Id.* at 2(a)(i)-(ii).) The Loan Modification also provided that at the end of the five-year period, the interest charged on the modified loan

would be calculated in the same manner as the initial Loan and that his payments would then include principal payments as well. (*Id.* at 2(a)(i), (c).) Plaintiff has failed to put BANA on notice of any further material terms that were not provided in the Loan Modification.

*Last*, plaintiff appears to allege BANA breached the Loan Modification by providing "different statements and different amounts due and payable." (FAC ¶ 68.) However, the allegations provided by plaintiff at best show BANA was not careful in sending out correct statements; they do not show BANA intentionally breached any term of the contract by asking for sometimes less and sometimes more than plaintiff believed was due.

Further, even if plaintiff has shown BANA breached the contract, he has failed to show that he suffered any damages as a result. Plaintiff alleges he (1) lost equity in his home; (2) lost money related to his rights and property; (3) suffered reduced credit scores and an unavailability of credit; and (4) reduced availability of goods, services, and jobs. (FAC ¶ 71.) However, if plaintiff lost equity in his home, lost any money, or suffered from a reduction of credit or availability of goods, services, or jobs, it was not because of BANA's alleged breach of a contract under which plaintiff made no payments. Instead, it was because plaintiff has failed to make a single payment toward his Loan in over **four years**. These problems began in February 2009, when plaintiff stopped making payments toward the Loan. As a result, plaintiff's claim for breach of contract must be dismissed with prejudice.

### C.   Plaintiff Has Not Alleged A Claim for Fraud.

Plaintiff's second claim for fraud is based on six statements made in September 2009 by BANA employees and attorneys. (*See* FAC ¶ 73.) To establish fraud, a plaintiff must prove that: (1) a misrepresentation of material fact was made by the defendant; (2) at the time the

representation was made, the defendant knew the representation was false or was aware that he did not know whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages. *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010). Also, Rule 9(b) requires a heightened pleading standard and provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To this end the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2006) (citing *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991)).

Plaintiff's claim for fraud fails because, as discussed below, he does not identify specific facts showing these statements were false, that the BANA employee or attorney had knowledge of their falsity, or that he relied on these statements to his detriment.

### 1. The Foreclosure Was On Hold Between August 2009 and October 2009 and Did Not Resume Until October 2011.

Plaintiff first states that in September 2009, BANA employees misrepresented to him the foreclosure on the Property had been stopped. (FAC ¶ 73(a), (e).) The allegations contained within plaintiff's FAC as they relate to September 2009 and judicially noticeable documents reveal, however, that the foreclosure of the Property was in fact "stopped" at all times relevant to this claim and was completely withdrawn by early October 2009.

Plaintiff alleges he discussed the foreclosure of the Property with BANA on seven

occasions in September 2009. During one of these discussions, he was told the Property was in foreclosure. (FAC ¶ 35.) During four of these discussions, plaintiff was told the foreclosure had been "stopped" and was no longer in foreclosure. (FAC ¶¶ 36, 38, 41-43.) During the last discussion, plaintiff was informed by BANA's attorneys they would proceed with the foreclosure, but that statement was corrected three days later. (FAC ¶¶ 39, 43.)

Judicially noticeable documents make clear throughout August and September 2009, the foreclosure of the Property did *not* proceed while plaintiff applied for a loan modification. NED One was recorded in June 2009, before plaintiff initiated the loan modification process. (*Compare* RJN Ex. 2 *with* FAC ¶¶ 17, 20-21.) During this time, BANA did not move forward with the next step of the foreclosure process, i.e. applying to the Denver District Court for an Order Authorizing the Sale of the Property. (*See* FAC.)

In fact, immediately after plaintiff returned the signed Loan Modification, BANA withdrew NED One. (RJN Ex. 3.) It was not until **August 28, 2011** that BANA reinitiated the foreclosure process, after plaintiff had failed to make a single payment under the Loan Modification within a nearly two-year period. (RJN Ex. 4.) Further, it was not until **October 28, 2011** that BANA moved for an Order Authorizing the Sale of the Property. (*See* RJN Ex. 5.) As is clear, BANA did not make any misrepresentation to plaintiff regarding the status of the foreclosure at any time in September 2009.

Even presuming BANA had made a misrepresentation, plaintiff has failed to show he relied on the alleged misrepresentations to his detriment. Plaintiff first alleges he relied on the statements to his detriment in signing the Loan Modification. (FAC ¶ 75.) However, plaintiff made absolutely no payments under the Loan Modification. (FAC ¶ 9; RJN Ex. 8 at 17:15-25.)

More importantly, plaintiff did not undertake any new debt he did not already owe to BANA. (*See* FAC Ex. 3; RJN Ex. 8.)  Instead, the Loan Modification served only to re-cast the Loan with a more favorable interest rate and permit plaintiff to cure the $18,000 arrearage on the Loan. (*See* FAC Ex. 3; RJN Ex. 8.)  Therefore, he suffered no detriment due to his signing of the Loan Modification, but instead was benefitted.

Last, even assuming plaintiff detrimentally relied on these allegedly false statements, he has failed to show his damages directly resulted from that fraud.  Plaintiff alleges he (1) lost equity in his home; (2) lost money related to his rights and property; (3) suffered reduced credit scores and an unavailability of credit; and (4) reduced availability of goods, services, and jobs. (FAC ¶ 77.)  However, it is clear that any money or equity lost, credit problems, or reduced availability of goods, services, and jobs stemmed both from plaintiff's initial traumatic brain injury and his subsequent failure to make any payments on his Loan, not because he entered into a Loan Modification under which he made no payments.  Plaintiff's fraud claim must be dismissed with prejudice to the extent it is premised on this allegation.

### 2. Plaintiff Does Not Allege A Special Forbearance Existed.

Plaintiff next argues that in September 2009, BANA misrepresented to him "the account is a special forbearance."  At the onset, it is entirely unclear to what plaintiff is referring.  As stated above Rule 9(b) requires a heightened pleading standard.  Plaintiff provides no allegations related to a "special forbearance;" he states only that *prior* to September 2009 he was offered a special forbearance (s*ee* FAC ¶ 24, 26), and that by September 2009 the special forbearance had been cancelled because plaintiff had failed to make any of the required payments thereunder. (FAC ¶ 37.)

Further, even presuming BANA misrepresented to plaintiff he had been granted a special forbearance, plaintiff did not rely on that promise to his detriment when signing the Loan Modification. As noted above, plaintiff did not make any payments under the Loan Modification or the alleged "special forbearance," nor did he incur any additional debt not already owed to BANA by virtue of the Loan Modification.

Similarly, plaintiff also did not incur any damages directly as a result of this alleged fraudulent misrepresentation. Plaintiff did not suffer a loss of equity in his home, loss of money related to his property, decline in credit, or reduced availability of goods, services, or jobs by virtue of BANA's alleged misrepresentation that he was granted a special forbearance. Instead, he suffered these losses both because of his injury and because he failed to make a single additional payment under the Loan after January 2009.

### 3. The Loan Modification Was "Payment Assistance."

Plaintiff also states BANA misrepresented to him in September 2009 that the Loan Modification constituted "payment assistance," when in reality it did not. (FAC ¶ 73(d).) However, plaintiff provides no facts to explain how this statement was fraudulent. He has not only failed to identify who stated the Loan Modification constituted "payment assistance" and when that was said, but he has not alleged a single fact to show the statement was false. Rule 9(b) requires that the circumstances surrounding fraud are pled with particularity. *See Koch*, 203 F.3d at 1236.

Generally speaking, providing a distressed borrower with a loan modification is one of a number of loss mitigation options a lender may voluntarily offer. *See generally*, 24 C.F.R. § 203.501 (noting that examples of loss mitigation can include loan modifications, deeds in lieu of

foreclosure, short sales, assumptions, and special forbearances.)  In this case, the Loan Modification reduced the amount of interest accruing on the Loan, and brought the monthly payments down to permit the borrower to stay in the Property and to resume making payments on the Loan without having to pay an arrearage of nearly $18,000. (RJN Ex. 7.) It would appear that the Loan Modification reasonably constituted "payment assistance."

Even assuming the statement was a misrepresentation, plaintiff did not rely on it to his detriment. As noted above, plaintiff made no payments under the Loan Modification. Further, any damages allegedly sustained by plaintiff are a direct result of his failure to have made a single payment toward the Loan in over **four years**. As a result, plaintiff's fraud claim should be dismissed with prejudice to the extent it is premised on the allegation that the Loan Modification was not "payment assistance."

### 4.     BANA Withdrew the NED Following the Loan Modification.

Plaintiff next states BANA misrepresented to him the Loan Modification would stop the foreclosure of the Property. (FAC ¶ 73.) However, judicially noticeable documents establish that immediately after BANA received the signed Loan Modification, it withdrew the NED, thereby withdrawing the foreclosure. (RJN Ex. 3.) It was not until plaintiff failed to make any payments under the Loan Modification for nearly *two years* that BANA filed NED Two and restarted the foreclosure process in August 2011. (*See* RJN Ex. 2.) Therefore, it was not false for BANA to represent to plaintiff the Loan Modification would stop the foreclosure.

Further, even if BANA had misrepresented to plaintiff the effect of the Loan Modification on the foreclosure process, he failed to rely on this representation to his detriment. Plaintiff made no payments under the Loan Modification and it did nothing but benefit him.

Additionally, any damages plaintiff alleges he sustained were a direct result of his failure to pay his mortgage, not BANA's alleged misrepresentation that the Loan Modification would stop the foreclosure. The fraud claim relating to this alleged misrepresentation should be dismissed.

### 5. No Payments Were Due Between August 2009 and November 1, 2009.

Plaintiff states BANA misrepresented to him in September 2009 that the mortgage payments were suspended between August 2009 through October 2009, and that no payment was required until November 1, 2009. (FAC ¶ 73(c) & (f).) Putting aside plaintiff's failure to plead this misrepresentation with any specificity, plaintiff has not pled any facts to show this representation was false. Whether plaintiff arguably received mixed messages as to the amount he owed (*see* FAC ¶¶ 49, 54, 56-58), at no time after sending plaintiff the Loan Modification did BANA request money due *prior* to November 1, 2009. (*Id.*) For example, plaintiff states he received a letter on October 5, 2009 stating that as of December 2009, he would owe BANA approximately $2,139.18. (FAC ¶ 49.)

Further, even assuming BANA did actually require a payment from plaintiff between August 2009 and November 1, 2009, plaintiff did not rely on the statement to his detriment. Plaintiff made no payments after *January 2009*. Entering into the Loan Modification was not to his detriment, as he received a reprieve from the original terms of his Loan and was permitted to forbear that amount owed between February 2009 and November 1, 2009. (*See* FAC Ex. 3.)

### V. CONCLUSION

Plaintiff's FAC fails to state any cause of action as a matter of law, and fails to allege any wrongdoing or basis for liability as to BOA. Defendants respectfully request the Court grant their motion to dismiss plaintiff's FAC without leave to amend.

Dated: February 21, 2013

Respectfully submitted,

*/s/ Victoria E. Edwards*
Justin D. Balser
Victoria E. Edwards
Melissa L. Cizmorris
**AKERMAN SENTERFITT LLP**
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
E-mail: justin.balser@akerman.com
E-mail: victoria.edwards@akerman.com
E-mail: melissa.cizmorris@akerman.com
*Attorneys for Defendants Bank of America Corporation; Bank of America, N.A., on behalf of itself and as successor-by-merger to BAC Home Loans Servicing, LP*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2013, I served a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** upon the following in the matter noted below:

>James P. Tatten
>8681 East 29th Avenue
>Denver, Colorado 80238
>(720) 256-3686
>jim@legislativebasecamp.com
>*(via CM/ECF and e-mail)*

>*/s/ Amy Rock*
>Amy Rock