IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 12–cv–00459–KMT

JAMES P. TATTEN, individually,

    Plaintiff,

v.

BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A., and
BAC HOME LOANS SERVICING, LP,

    Defendants.

---

**ORDER**

---

This matter is before the Court on "Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 44 [Mot.], filed February 21, 2013). Plaintiff filed his response on March 14, 2013 (Doc. No. 48 [Resp.]), and Defendants filed their reply on April 1, 2013 (Doc. No. 49 [Reply]). This matter is ripe for ruling.

**I. FACTUAL BACKGROUND**

In his Amended Complaint, Plaintiff states on November 7, 2008, he suffered a traumatic brain injury. (Doc. No. 40 [Am. Compl.], ¶ 8.) He alleges the defendants were notified of his brain injury on November 19, 2008. (*Id.*) Plaintiff states he made mortgage payments for November and December 2008 and January 2009. (*Id.*) Plaintiff alleges between February 2009 and April 2009 he received several letters from Countrywide Bank Home Loan and BAC Home

Loans Servicing, LP to notify him that his mortgage loan was in default and to advise him he may qualify for a mortgage refinance. (*Id.*, ¶¶ 11–13.)

Plaintiff alleges between June 2, 2009, and January 11, 2010, he had several conversations with and received several letters from various employees of Bank of America ("BOA") and the attorneys who were retained by the defendants to proceed with foreclosure proceedings on Plaintiff's property. (*See id.*, ¶¶ 14–61.) Plaintiff alleges over this period of time, the BOA employees and foreclosure attorneys gave him conflicting information regarding the status of his mortgage account, whether his account was in forebearance, whether his account was in foreclosure, and whether his account was eligible for loan modification. (*See id.*)

Plaintiff asserts two claims for relief against all defendants, including a breach of contract claim and a fraud claim. (*Id.*, ¶¶ 62–77.) Plaintiff seeks economic and non-economic damages. (*Id.* at 15.)

Defendants move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) on the bases that (1) Plaintiff has alleged no wrongdoing by Defendant BOA; (2) Plaintiff has not identified a breach of contract; and (3) Plaintiff has not alleged a claim for fraud. (*See* Mot.)

## II. LEGAL STANDARDS

### A. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B. *Failure to State a Claim Upon Which Relief Can Be Granted*

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

       Notwithstanding, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### III.  ANALYSIS

*A.*   *Breach of Contract Claim*

Defendants argue Plaintiff has not identified a breach of contract.  To state a claim for breach of contract under Colorado law[1], a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

In his Amended Complaint, Plaintiff states that he and Defendant BAC Home Loans Servicing, LP, entered into a Loan Modification Agreement ("Agreement") on October 6, 2009.  (Am. Compl., ¶ 63.)  Plaintiff states he signed and delivered the Agreement on September 28, 2009.  (*Id.*, ¶ 64.)  The Court finds Plaintiff has alleged the existence of a contract.

Defendants argue, however, that Plaintiff has failed to state facts sufficient to establish his own performance or a breach of the Loan Modification Agreement.  (Mot. at 7.)  Plaintiff has attached the Agreement to his Amended Complaint.[2]  (Am. Compl., Ex. 3.)  The Agreement provides that Plaintiff was obligated to begin making payments, the first payment being an

---

[1] A federal court with diversity-based jurisdiction over a case applies the laws of the forum state in analyzing the underlying claims.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  Cases that have been removed under 28 U.S.C. § 1441(a) are no different.  *See Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305, 309 (10th Cir. 1950) ("It is a well established principle that in removal cases the Federal Court must apply the state law and the state policy.").

[2] The Court may consider documents outside the pleadings, so long as they are attached to or referenced in the complaint.  *Hall*, 935 F.2d at 1112.

interest only payment of $1,586.00, on November 1, 2009. (Am. Compl. at 21, ¶ 2(a)(ii)). Plaintiff fails to allege he made any payments under the Agreement. (*See* Am. Compl.) Rather, Plaintiff admits he made no payments at all, including payments under the Agreement, after January 2009. (*Id.*, ¶ 9; Doc. No. 44-4 at 17:15–25.[3]) Though unclear, it appears Plaintiff may be attempting to allege he was excused from performing his obligations under the Agreement because on November 9, 2009, he was advised by the defendants "that there were no workout options for financial assistance." (Doc. No. 41, ¶ 65.) However, this allegation does not save Plaintiff's claim because by November 9, 2009, Plaintiff had already failed to perform his obligations under the Agreement. Therefore, because Plaintiff has failed to allege he substantially performed his obligations under the Agreement or that he was excused from doing so, his claim for breach of contract is dismissed.[4]

---

[3]At any stage of the proceedings the Court may take judicial notice of a fact which is not subject to reasonable dispute, a requirement that is satisfied if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment . . . . This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citations omitted). Here, the court takes judicial notice of the transcript from the January 20, 2012 Rule 120 hearing held in Denver County District Court case number 2011CV007484, *In re Bank of America, N.A.*, before the Honorable J. Eric Elliff, attached to Defendants' Motion.

[4]The Court need not address the other arguments made by Defendants that Plaintiff has failed to sufficiently plead a breach of contract claim.

B.   *Fraud Claim*

Plaintiff's claim for fraud is based on six statements allegedly made in September 2009 by Defendants' employees and attorneys. (*See* Am. Compl., ¶ 73.) Defendants argue Plaintiff has not alleged a claim for fraud. To establish fraud, the plaintiff must prove that "(1) a fraudulent misrepresentation of material fact was made by the defendant; (2) at the time the representation was made, the defendant knew the representation was false or was aware that he did not know whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages." *Barfied v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010) (citations omitted).

   1.   *Allegation That the Defendants Advised Plaintiff the Foreclosure Was "Stopped"*

In his fraud claim, Plaintiff alleges in September 2009, the defendants' employees made false statements that the foreclosure on his property had been stopped in order to mislead him into modifying his home loan. (Am. Compl., ¶ 73.a.) In support of this allegation, Plaintiff alleges he discussed the foreclosure of the property with Defendants on seven occasions in September 2009. During one of these discussions, he was told the Property was in foreclosure. (*Id.*, ¶ 35.) During four of these discussions, Plaintiff was told the foreclosure had been "stopped" and was no longer in foreclosure. (*Id.*, ¶¶ 36, 38, 41–43.) During the last discussion, Plaintiff was informed by Defendants' attorneys they would proceed with the foreclosure, but that statement was corrected three days later. (*Id.*, ¶¶ 39, 43.)

Defendants rely on documents attached to their Motion to argue that it was clear throughout August and September 2009, the foreclosure did not proceed while Plaintiff applied for a loan modification.[5] (Mot. at 11.) However, the documents to which Defendants refer show only that in June 2009, Defendants filed a "Notice of Election and Demand for Sale by Public Trustee" (Doc. No. 44-3 at 1), which was withdrawn on October 13, 2009 (*id.* at 2), after Plaintiff signed the Agreement. The documents referenced by Defendants do not show, as Defendants argue, that the foreclosure was not proceeding while Plaintiff applied for loan modification or that Defendants did not make any misrepresentation to Plaintiff regarding the status of the foreclosure in September 2009.[6]

Defendants next argue that, even if it made misrepresentations, Plaintiff has failed to show he relied on the alleged misrepresentations to his detriment. (Mot. at 11–12.) The court

---

[5]The Court takes judicial notice of Document Numbers 44-1 through 44-4 and 44-5 (Exhibit 7), which are copies of public records recorded with the Official Records of the City and County of Denver and copies of documents in Denver County District Court case number 2011CV007484, *In re Bank of America, N.A. See* Fed. R. Evid. 201(b)(2)*; Tal*, 453 at 1244, 1264 n.24. Finally, the Court takes judicial notice of Document Number 44-5 (Exhibit 8), which Plaintiff refers to in his Amended Complaint (Am. Compl., ¶¶ 33–34), and of which Plaintiff does not dispute the authenticity (*see* Resp.). *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir.1997) ("If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.) (citations omitted).

[6]Defendants appear to argue that because there is no document showing the property had been ordered to be sold in September 2009, the Court should infer that the foreclosure had, in fact, been "stopped." (*See* Mot. at 10–11.) However, the sufficiency of a complaint is a question of law, and when considering a motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the Plaintiff's favor. Fed. R. Civ. P. 12(b)(6).

8

agrees. First, Plaintiff did not make any payments under the Agreement. (Am. Compl., ¶ 9; Doc. No. 44-4 at 17:15–25.) Second, Plaintiff did not undertake any new debt he did not already owe to the defendants, and the Agreement provided a more favorable interest rate and permitted Plaintiff to cure the $18,000 arrearage on his original loan by adding it to the modified loan. (*See* Am. Compl. at 21–23; Doc. No. 44-2 at 17; Doc. No. 44-5 at 4–7.) Thus, the Court finds the records attached to his Amended Complaint and Defendants' Motion belie any allegation that Plaintiff signed the Agreement to his detriment.

### 2. *Allegation That the Account Was a Special Forbearance*

Plaintiff alleges that the defendants made a false statement that "[t]he account is a special forbearance." (Am. Compl., ¶ 73.b.) Defendants argue that Plaintiff has failed to make any allegations regarding a special forebearance and that, to the extent any such misrepresentation was made, Plaintiff did not rely on it to his detriment.

The Court agrees with Defendant. Upon a review of the Amended Complaint, Plaintiff states that on July 1, 2009 and July 27, 2009, he was advised his account was in special forbearance. (*Id.*, ¶ 24.) However, on September 17, 2009, Defendants sent Plaintiff a letter canceling the special forbearance because the required payments had not been received. (*Id.*, ¶ 37.) Plaintiff alleges he had another conversation with one of Defendants' employees on September 23, 2009, in which Plaintiff again was advised "there was a special forbearance." (*Id.*, ¶ 41; .) This bare assertion, however, is belied by the documents that show that the special forbearance was cancelled on September 17, 2009, and that Plaintiff was so notified. Moreover, it is nonsensical for Plaintiff to assert that a statement by one of Defendants' employees

supposedly advising his account was under a special forbearance, despite his receipt of a letter to the contrary and the alleged conflicting information Plaintiff had received over a period of many months, would induce the plaintiff to sign a loan modification agreement. Plaintiff has failed to plead facts to allow the court to draw the inference that the defendants are liable for a claim for fraud in this regard. *See Iqbal*, 129 S. Ct. at 1949–51; *Hall,* 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.") Finally, to the extent one of Defendants' employees did make the representation that Plaintiff's account was still under a special forbearance on September 23, 2009, Plaintiff fails to allege the employee knew the representation was false or was aware that he did not know whether the representation was true or false. *See Barfied*, 232 P.3d at 290.

### 3. *Allegation That Modification is Payment Assistance*

Plaintiff alleges the defendants made false statements that the Modification Agreement was "payment assistance." (Am. Compl., ¶¶ 41, 73.d.) Defendants argue that Plaintiff has alleged no facts to explain how this statement was fraudulent or how he relied on this alleged false statement to his detriment. (Mot. at 13.)

Recasting of a mortgage, including mortgage modification, is one of the appropriate actions a lender may offer a distressed borrower. *See* 24 C.F.R. §§ 230.501, 230.616. The Court agrees with Defendants that the Agreement, which provided a more favorable interest rate and permitted Plaintiff to cure the $18,000 arrearage on his original loan by adding it to the modified loan (*see* Am. Compl. at 21–23; Doc. No. 44-2 at 17; Doc. No. 44-5 at 4–7) constituted "payment assistance." The court also agrees with the defendants that, even if the statement was

a misrepresentation, Plaintiff fails to allege how he relied on it to his detriment, given the fact that he failed to make any payments under the Agreement and that the Agreement benefitted him.

### *4.     Allegation That the Modification Stops Foreclosure*

Plaintiff alleges on September 23, 2009, Defendants' employees advised Plaintiff that if he signed the Agreement, foreclosure would be "stopped." (Am. Compl., ¶¶ 41, 42.) Defendants argue that this was not a false statement because it withdrew the "Notice of Election and Demand for Sale by Public Trustee" (Doc. No. 44-3 at 1) immediately after it received the signed Agreement from Plaintiff. (Mot. at 14.) Indeed, on October 13, 2009, only one week after the Agreement was approved by the defendants (*see* Am. Compl. at 27), Defendants filed a "Withdrawal of Notice of Election and Demand for Sale by Public Trustee." (Doc. No. 44-2 at 2.) Therefore, Plaintiff's claim that the defendants misrepresented to him that the foreclosure would "stop" upon his signing the Agreement is belied by the records submitted by Defendants and is dismissed.

### *5.     Allegation That No Payments Were Required Until November 1, 2009*

Plaintiff alleges on September 23, 2009, the defendants made false statements that upon his signing the Agreement, "mortgage payments are suspended through October 2009 " and "[a] payment is not required until November 01, 2009." (Am. Compl., ¶¶ 41, 73.c. and f.) Defendants argue that at no time after sending Plaintiff the Agreement did they request payments due prior to November 1, 2009.

In support of his allegations, Plaintiff refers to his Exhibit 2 (*see* Am. Compl, ¶ 73.f.), which is the letter from Defendants dated September 17, 2009, in which they advise Plaintiff that the Special Forbearance has been canceled. (Am. Compl. at 19.) This letter pre-dates the Agreement that Plaintiff executed on September 28, 2009. (*See id.* at 19, 21–22.) However, the Agreement, which is relevant to this claim, provides that Plaintiff's first payment of $1,586.00 was due on November 1, 2009. (*Id.* at 21, ¶ 2(a)(ii)). In his Amended Complaint, Plaintiff states on October 5, 2009, he received "a home loan statement for $2,139.18, effective December 2009." (*Id.*, ¶ 49 [emphasis added].) Plaintiff alleges on November 27, 2009, he received a statement for "$1,914.83, due on December 01, 2009."[7] (*Id.*, ¶ 58.) Thus, it is clear from the allegations in Plaintiff's Amended Complaint that he was not asked to make payments from September 23, 2003, until after November 1, 2009. Defendants did not reinitiate the foreclosure process until August 28, **2011**, after Plaintiff had failed to make a single payment under the Agreement within a nearly two-year period. (Doc. No. 4403 at 3.)

Thus, the alleged statement by Defendants' employees that loan modification would stop foreclosure is reinforced by the allegations in Plaintiff's Amended Complaint and by the documents attached to Defendants' Motion, which show that the defendants did not require a payment from the time Plaintiff signed the Agreement until the date his first payment was due on

---

[7]Defendants acknowledge the fact that Plaintiff may have received mixed messages about the amount he owed. (Mot. at 15; *see* Am. Compl., ¶¶ 49, 54, 56–58.) Nevertheless, after Plaintiff signed the Agreement, the defendants did not request that Plaintiff make a payment prior to November 1, 2009.

November 1, 2009.  Therefore, Plaintiff's claim that the defendants' employees made false statements by advising him his payments were suspended through October 2009 is dismissed.

For the foregoing reasons, Defendants' Motion to dismiss for Plaintiff's failure to state a fraud claim should be granted.

**WHEREFORE**, it is

**ORDERED** that "Defendants' Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 44 ) is **GRANTED**.  It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case.  It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

**ORDERED** that this case is **CLOSED**.

Dated this 21st day of August, 2013.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge